153  393
j157  18

TOWNSHIP OF ECORSE *v.* JACKSON, ANN ARBOR & DETROIT RAILWAY.

1. STREET RAILROADS — ACQUISITION OF RIGHTS — CONSENT OF PROPERTY OWNERS.

Where a street railroad, proceeding under Act No. 238, Pub. Acts 1901, obtained the consent of more than the necessary two-thirds of the abutting property owners without fraud, the fact that the consent of two others was obtained by fraud was not controlling.

2. EMINENT DOMAIN—USE OF HIGHWAYS—ADDITIONAL SERVITUDE — WHAT CONSTITUTES — STREET RAILROADS — RAILROADS IN STREETS.

There is a well-defined distinction between the definitions of the words "railroad" and "street railway," the former being a word of general and extended meaning, applying to all roads incorporated under the general law, and the latter being local in its signification, referring to transportation of a character entirely different from that of a general railroad; the former has always been held to impose an additional servitude upon a public way for which the abutting owners were entitled to compensation, while the latter has been held to add no such burden.

3. STATUTES — OBJECTS AND TITLES — AMENDMENTS — HARMONY— CONSTITUTIONAL LAW—RAILROADS—STREET RAILROADS.

Act No. 238, Pub. Acts 1901, the title of which discloses an intent to amend the general railroad law, offends section 20 of article 4 of the Constitution, requiring unity of object and title, inasmuch as it attempts to graft upon the general railroad law a section under which corporations organized under it could enjoy all the rights and benefits of street railways, and acquire franchises in the public highways without limit as to time or control by local authorities.

Appeal from Wayne; Mandell, J. Submitted January 14, 1908. (Docket No. 52.) Decided July 1, 1908.

Bill by the township of Ecorse against the Jackson, Ann Arbor & Detroit Railway and others to enjoin the construction of a railway upon a highway. From a de-

cree dismissing the bill, complainant appeals. Reversed, and decree entered for complainant.

*James H. Pound,* for complainant.

*Graves, Hatch & Wasey,* for defendants.

McALVAY, J. Complainant township filed its bill of complaint against the railway company, and the commissioner of highways of said township, who are the principal defendants to the suit, asking for a discovery from them to know by and under what agreement or by what right said railway claims to enter upon a highway of said township and occupy the same, and also for an injunction against them to restrain them from constructing a railway upon a certain road running through said township, and for general relief.

Defendant railway is a Michigan corporation organized under the general railroad law of the State. Application was made by it through its vice-president, who appeared before the township board, for a perpetual right of way for a street car line on Fort street boulevard in said township, such right of way to take 24 feet from the center of the highway. Objections were made to a perpetual franchise, to a T rail as proposed, and also to the proposed crossings. Nothing further was done before the board. Defendant railway proceeded to enter upon said highway and to take possession of 24 feet in the center thereof and to construct a railway thereon, laying an ordinary T rail. This it now appears was done under claimed authority of defendant highway commissioner, who, without the knowledge or consent of complainant, entered into an agreement with defendant railway authorizing it to construct such railway and to enjoy its franchise without limit as to time. This agreement was not filed or recorded until after this suit was commenced.

The authority under which the highway commissioner acted is given by Act No. 238, Pub. Acts 1901, which provides as follows:

"SECTION 1. That article two of chapter one hundred sixty-four of the Compiled Laws of the State of Michigan of the year eighteen hundred ninety-seven, said chapter one hundred sixty-four being 'An act to revise the laws providing for the incorporation of railroad companies and to regulate the running and management, and to fix the duties and liabilities of all railroads and other corporations owning or operating any railroad in this State,' be amended by adding a new section thereto, to be known as section fifty-one, and read as follows:

"SEC. 51. When any corporation is organized under this act for the purpose of constructing, maintaining and operating a street, suburban or interurban railroad, whose cars shall be operated by motive power other than steam engines, such railroad may be constructed upon any public street, lane, alley or highway of any village on such terms and conditions as shall be agreed upon between the railroad company and the village board of such village; and such railroad may be constructed upon any public street, lane, alley or highway of any township on such terms and conditions as shall be agreed upon between the railroad company and the commissioners of highways of such township: *Provided,* The railroad company shall have obtained the consent to the construction thereof of two-thirds of the owners of property adjoining the roadbed of such railroad in such township; and if such consent from any owner cannot be obtained by agreement, then for such consent compensation shall be made by the railroad company to such owner, which shall be ascertained as herein prescribed for obtaining property or franchises for the purpose of its incorporation."

The claim of complainant that all of the signatures of owners giving consent to construction, required by statute, were fraudulently obtained is not supported by the record. Of the two instances relied upon as fraudulent, but one of them can be said to support the claim, although the testimony indicated that absolute frankness was not used in the other case. This cannot be in any way controlling, for the reason that more than the required two-thirds of the property owners were secured.

The trial court denied the relief prayed, and dismissed the bill of complaint, without costs. The first question

raised by the complainant is, that the act under which defendant corporation claims to be authorized to enter upon and occupy the highway in question, and construct a railway thereon by an agreement with the highway commissioner, violates article 4, section 20, of the Constitution, which provides that no law shall embrace more than one object which shall be expressed in its title.

It will be seen from the entitling of the general railroad law given above in the act of 1901, that the object provided for is the incorporation of railroad companies, and to regulate the running and management, and to fix the duties and liabilities of all railroads, and other corporations owning and operating any railroad in this State. The general railroad law in practically its present form embodied in chapter 164, 2 Comp. Laws, is the revision of 1873.   Both before and since that revision, many of its provisions have been before this court for construction. Previous to 1871 the general railroad law contained no authority for the use of streets.   In 1871 authority was given to lay railroads in streets under certain conditions, one of which was the payment of damages and compensation to abutting owners before occupation by the railroad.   Since that time, this requirement has been upon our statute books and remains unrepealed.   In recent years conditions in cities and the more densely populated communities have required methods of transportation of the inhabitants which would relieve the congestion of the streets in such places, and from these conditions has grown up the street railway system of the country.   Laws have been enacted authorizing corporations to be organized for the purposes of constructing, owning, and operating these street railways.   This system has in time extended to what has been called suburban and interurban railways. In this State until the enactment of the act of 1901, relied upon by defendants, the operation and construction of these street railways has not been authorized under our general railroad law.   Under the laws authorizing the construction and operation of street railways before the

act of 1901, decisions have been rendered by this court, supported by the decisions of the courts of last resort of some other States, holding that such railways constructed upon and along the public highways were not an additional servitude and that the abutting owners could not recover damages by reason of the use of such highways for that purpose. *Detroit City Ry.* v. *Mills*, 85 Mich. 634; *People, ex rel. Kunze,* v. *Railway Co.*, 92 Mich. 522 (16 L. R. A. 752); *Dean* v. *Railway Co.*, 93 Mich. 330. Judge COOLEY, in *Grand Rapids, etc., R. Co.* v. *Heisel*, 38 Mich. 62, said of a street railway:

" So far from constituting a new burden, it is supposed to be permitted because it constitutes a relief to the street; it is in furtherance of the purpose for which the street is established and relieves the pressure of local business and local travel instead of constituting an embarrassment. * * * It is enough that the use of the street for a city railway is a proper use and therefore a lawful use."

Upon this and similar reasoning it has been held by this court that a street railway is not an additional servitude.

The object of the amendment of 1901 was to graft onto the general railroad law a section under which corporations organized under it could enjoy all the rights and benefits of street railways, and the further right in townships to acquire franchises in the public highways without limit as to time, and without any control by the municipality as to fares, speed, and many other matters, at least as far as the provisions of the amendment are concerned; all this to be accomplished by an agreement with a highway commissioner after obtaining consent of two-thirds of the abutting owners.

The object expressed in the entitling of the act has already been stated. The object contained in this amendment is not expressed in that entitling. The amendment was not germane to the purposes of the general railroad law. No street railway was ever contemplated in and by its terms. A reading of the entitling would give no intimation of the object in the body of the amendatory act.

There is a well-defined distinction between the definitions of the words "railroad" and "street railway." One is a word of general and extended meaning applying to all roads incorporated under the general law. The other is local in its signification, referring to transportation of a character entirely different from that of a general railroad. One has always been held to impose an additional servitude upon a public way for which abutting owners were entitled to compensation; the other, as already stated, has been held to add no such burden. The act amended did not provide for the incorporation of street, suburban, or interurban railways, as might be inferred from reading the amendment of 1901. In the *Mills Case*, supra, the writer of the majority opinion recognized the fact that the general purpose of the law then under construction (being the train railway act) was to *provide* for local transportation only, as distinguished from transportation by railroads generally.

In the *Heisel Case*, supra, Mr. Justice COOLEY distinguished between railroads and street railways. He said:

" It is, to my mind at least, doubtful whether it is competent for the public authorities to bind the interests of individuals by any consent they may give to the occupation for railroad purposes of a public highway, when the land over which the highway is laid is owned by private parties. If the railroad were only a city railway constituting a mere local convenience, and calculated to relieve the pressure of traffic and travel upon the street, the question of course would be different. * * * A street railway for local purposes, so far from constituting a new burden, is supposed to be permitted because it constitutes a relief to the street. * * * But we cannot say the same in the case of the ordinary railroad. It is not usual for such a road to be laid in one of the public highways, and the cases in which it is permitted are exceptional. For that reason, therefore, if for no other, the owner whose land is taken for a highway * * * cannot be understood to have assented to its being appropriated * * * to railway purposes at the discretion of the

public authorities, and to have been compensated for such appropriation. Neither can the use of the highway for the ordinary railway be in furtherance of the purpose for which the highway is established. * * * The two uses, on the other hand, come seriously in conflict; the railroad constitutes a perpetual embarrassment to the ordinary use."

This quotation is made to show the view of the learned Justice in distinguishing between them as to their objects and uses, as well as to accentuate the proposition that the object of the amendatory act was not expressed in the title of the amended act. The object of that act was to provide for the incorporation of companies to engage in State-wide transportation.

It is unnecessary to extend the discussion. Much might be said in support of the argument concerning the system of taxation and of State and municipal control of, and restrictions upon, ordinary railroads.

The question as to whether corporations organized under the general railroad act can be authorized to construct, own, or operate street railways is not before us, and we do not express any opinion upon that question. We do decide that this act of 1901 is unconstitutional and void for the reasons given, and therefore does not confer authority upon defendant corporation to do the acts complained of in this case.

The decree of the circuit court is reversed, and a decree will be entered in favor of complainant, and defendants will be perpetually enjoined from doing the acts complained of, with costs of both courts.

GRANT, C. J., and BLAIR, MOORE, and CARPENTER, JJ., concurred.