### CITY OF FLINT *v.* GRAND TRUNK WESTERN RAILWAY CO.

1. RAILROADS—STREETS—UNAUTHORIZED CROSSING—ESTOPPEL.

Where defendant railroad company, in 1910, constructed three stub tracks, constituting a siding, crossing certain streets in the city of Flint, without the latter's consent, but no objection was made thereto and said tracks were used until 1916, said city is estopped from requiring said tracks to be torn up and the streets returned to their original condition.

2. SAME—STATUTES—RIGHT TO CROSS STREETS.

In view of 2 Comp. Laws 1915, § 8232 *et seq.*, permitting the tracks of steam railroads built on private right of way to cross public highways and streets, and a resolution of the common council of the city of Flint authorizing the construction of certain stub tracks across certain streets in said city, by defendant steam railroad company, to facilitate the movement of freight, which resolution was later rescinded and the construction sought

On power of municipality to compel removal of spur track, turnout or switch from street or highway, see note in L. R. A. 1918B, 481.

to be enjoined, although defendant had incurred considerable expense in reliance thereon, *held*, that the completion of the tracks should be permitted.

3. Same.

*Held*, that defendant should be permitted to connect the east end of said sidings with its main track, subject to the conditions imposed by the resolution of the common council authorizing said construction.

4. Same—Regulation by Municipal Corporation—Ordinances— Public Utilities Commission.

If the State laws as to the movement of trains over streets and highways is insufficient to safeguard those using the streets of a city, they may be supplemented by reasonable ordinances and by the maintenance of gates and the keeping of watchmen as may be required by the public utilities commission.

Appeal from Genesee; Brennan, J. Submitted October 15, 1918. (Docket No. 51.) Decided October 6, 1919.

Bill by the city of Flint against the Grand Trunk Western Railway Company to enjoin the laying of certain tracks. Defendant filed a cross-bill, claiming affirmative relief. From the decree rendered, defendant appeals. Reversed, and decree entered.

*John H. Farley* (*Guy W. Selby*, of counsel), for plaintiff.

*Harrison Geer* (*Geer, Williams & Martin*, of counsel), for defendant.

Moore, J. The trial judge stated so clearly the issues involved in this proceeding in a written opinion filed by him, that we quote from it freely as follows:

"From the concessions made in open court by counsel for the respective parties, and the testimony of witnesses produced upon the hearing, I find the material facts to be substantially as stated in plaintiff's amended bill of complaint, except that I am unable

to find that there has been such use made by the public of the streets known as Cherry and Willow streets for a distance of 165 feet crossed by the lines and tracks of the defendant railway north of Burton street as will justify the city in claiming the existence of these streets across defendant's property as public highways.

"Prior to May, 1910, the defendant and its predecessors had a steam railway extending through the city of Flint for the transportation of freight and passengers, using one main line track which extended across Forest street and Burton street and easterly across Walnut, Decker and Maple streets, which is represented on the blueprint attached to defendant's pleadings by the lower white line, and it was at that time also using a track represented by the white line just north of said main track, coming from the west and extending to a point at or near the west line of Walnut street.

"Said defendant, in May, 1910, commenced the construction of what is now known as Flint east yards by constructing the three stub tracks, so-called, indicated by the upper white lines on the said blueprint, crossing Willow, Cherry, Walnut, Decker and Maple streets, and said tracks were laid across Walnut and Decker streets without first obtaining the consent of the common council of the city of Flint, and said stub tracks have since their construction been used by the defendant for the storage and switching of cars across those streets as well as Burton, Forest, Crapo streets and Richfield road.

"That in 1915, the track lying just north of the main track was extended across Walnut, Decker and Maple streets, and the track shown by the white line on the blueprint lying just north thereof was also constructed extending across these streets, which was also done without permission of the common council of the city of Flint, and these have since been used for the switching and storage of cars across these and the other streets named.

"That in May, 1916, the defendant commenced the construction of the tracks indicated on the blueprint by red lines, and some objection having been made, an application was made to the common council, July

81, 1916, for the permission to construct these additional tracks; that such permission was granted upon certain conditions, which conditions were not complied with, and at the next session of the common council of the city of Flint, that body acting under the authority conferred by its charter, reconsidered and rescinded its action granting such permission, and the city of Flint applied to this court for an injunction restraining the defendant from continuing the work of laying such additional tracks and applied for and obtained a temporary injunction, and by leave of the court, plaintiff filed an amended bill of complaint, which the defendant answered, and this case has been heard upon the pleadings so amended.

"At the request of counsel, I have made a personal inspection of the yards and crossings in the vicinity thereof, and I find from the evidence in the case and from such inspection that the Richfield road, Crapo and Forest streets are much traveled streets; that an electric street railway crosses defendant's railway tracks at grade on Crapo street, and that the switching of freight cars by the defendant railway across these streets in connection with its use of the tracks now laid in its east yard greatly impedes traffic on these streets and has created a dangerous and menacing condition, and that this is also true to a lesser extent at Burton, Walnut and Decker street crossings; that the occupation by the railway company of Walnut and Decker streets by such yard tracks without the consent of the city council creates and constitutes a public nuisance.

"While in the opinion of some of the witnesses produced by the defendant, the construction of the proposed additional tracks would tend to diminish dangers resulting from the switching of cars in and out of this yard across Richfield road, Crapo and Forest streets, yet from the inspection of the defendant's yard and the manner in which the cars must necessarily be stored and switched on the tracks as proposed, the court is not convinced that the danger will be materially lessened, but on the contrary the menace will be greatly increased across Walnut, Decker and Maple streets should such additional tracks be constructed as proposed, and the construction of such tracks in such

streets would also be a public nuisance and menace to persons having occasion to use said crossings.

"The questions presented by the pleadings and proofs are whether the right to construct these additional tracks with the tracks already constructed, occupying about 165 feet of the streets for yard purposes, is conferred by subdivision 5 of section 6587, Howell's Michigan Statutes (2d Ed.) [2 Comp. Laws 1915, § 8243], without the consent of the common council of the city of Flint, as well as the right of the defendant to maintain the tracks constituting part of said switching yards constructed in 1910 and 1915, and to continue the operation of such yards without the consent of the common council. The case of *Highway Commissioner of Ecorse Township* v. *Railroad Co.,* 148 Mich. 436, is controlling in my opinion of the law in this State so far as these questions are concerned. * * *

"In conclusion I find that in view of the existing conditions which have made necessary better shipping facilities, and the fact that some considerable time may be required for the defendant railway to establish and equip switching yards at suitable points in or near the city, it is obvious that the defendant should be permitted to continue the use of its east yard with the tracks now laid and be permitted to construct the additional tracks proposed, as shown on the blueprint, and maintain the same for a longer period than would ordinarily be considered reasonable, and for these reasons only, the defendant should be permitted to construct the proposed tracks as shown on the blueprint by the red lines, and to use the same and continue the use of the last mentioned tracks after their construction, together with those already in use in its east yard as now located for a period not exceeding four years.

"Therefore, a decree may be entered that the defendant railway be perpetually restrained and enjoined from the further use of its switching and storage tracks constituting said east yard, as distinguished from its main and sidetracks necessary for the transportation of freight and passengers from and after four years from the date of the decree, and from the construction of any additional tracks across Burton,

Maple, Decker and Walnut streets, and that the defendant be required to remove from said streets all such tracks and ties now laid in said streets other than its main and sidetracks for the transportation purposes only, and that it restore said streets to their original condition, as near as may be, within four years of the date of such decree. The court recommends that in view of all the circumstances and present conditions, and the government control of the defendant, that the common council grant permission to the defendant railway to use all said streets with its proposed additional tracks under reasonable, proper safeguards; that the defendant file with the city a properly executed agreement to remove all such sidetracks, including the proposed tracks, if constructed within a period of four years from the date of this decree."

From this decree the defendant has brought the case here by appeal.

The plaintiff did not appeal and the conclusion of the trial judge as to Cherry and Willow streets must be regarded as final.

The first question calling for serious consideration is the status of the tracks constructed in 1910. The construction of these tracks was known to everybody in that vicinity. They were built upon defendant's private right of way at a very considerable expense. Upon their completion the defendant immediately began to use them and continued to do so without objection or complaint so far as the record shows, upon the part of the city, until the amended bill of complaint was filed in December, 1916. To now require the defendant to tear up these tracks and to restore the streets to the condition they were in before the tracks were built would be exceedingly inequitable, and the city should be regarded as estopped from asking this to be done.

The next question is as to the decree which should be entered in relation to what was proposed to be done in 1916. These tracks if laid would all be on defend-

ant's right of way except where they crossed the streets and would be between the tracks laid in 1910 and Burton street.

In defendant's answer to the amended bill is the following:

"For answer unto paragraph VI of said amended bill, and in partial explanation of the allegations therein made, this defendant says that on July 31, 1916, the common council of said city of Flint passed the following resolution, viz.:

" 'Moved, that the application of the Grand Trunk Railway Company for permission to construct certain sidetracks in the vicinity of Walnut street as shown on the map filed with such application, be granted on condition that the same be without prejudice to the right of the city to a crossing on Willow street when desired, and on further condition that gates be placed on all crossings affected by such increased railroad traffic and that such crossings be planked the full width of street; also that at the same time said railroad company, at its own expense put in a crossing in continuation of Minnesota avenue, with proper cattle guards, sidewalks and planked roadway at least sixteen feet wide, which motion was adopted.

" 'Dated, July 31st, 1916.'

"That in contemplation of the passage of said resolution this defendant had caused the work of installing said tracks to be started before the passage thereof, but had not made very much progress in that respect, and that after the passage thereof, it proceeded vigorously to prosecute the work of grading, etc., preparatory to installing said tracks, and had expended a large sum of money in such work, to-wit: five thousand dollars and upwards, when said common council, without any notice to it, said defendant, on August 7, 1916, rescinded said resolution, and now claims that the defendant has no right to proceed to construct said tracks across said streets as planned, and as permitted by said resolution. It further says, in explanation of the alleged dangerous condition in which said streets were left, that it was restrained by the injunction of this honorable court, issued in this suit, from further proceeding with such work, and that its failure, if any failure there was, to restore said streets to their

original condition as near as may be, was because of said injunction, and not because of any intentional omission to thus restore them, and that whatever trouble the plaintiff has been put to in obtaining protection at any of said street crossings, is directly due to the stoppage of said work by said injunction."

There was an abundance of testimony supporting the averments of the answer as to the work done and the cost thereof. These proposed tracks are near the main line. There is testimony that if constructed they would not only relieve the situation as to local freight but would facilitate the movement of through freight. An inspection of the blueprint supports this testimony.

The instant case is more within the principles of law stated in *City of Mason* v. *Railway Co.*, 157 Mich. 1, than it is within *Highway Commissioner of Ecorse Township* v. *Railroad Co.*, 148 Mich. 436, as the last-named case dealt with a terminal yard. The applicable statute is quoted in the opinion in the first-named case and need not be repeated here. In view of the use to be made of the tracks which were in process of construction when this suit was brought, and the resolution of the common council of July, 1916, and the expenditure incurred by defendant in reliance thereon, we think defendant should be permitted to complete the tracks begun in 1916.

Another question demands attention, and that is, Should defendant be permitted to connect the east ends of these sidings with its main track? An examination of the blueprint and the undisputed evidence shows that this would have a tendency to relieve the situation instead of further congesting the traffic. The defendant should be allowed to complete its work as proposed by the blueprint, but subject to all of the conditions imposed by the resolution before quoted which was adopted by the common council.

It goes without saying that public streets are essential in every city. It is equally true that modern civili-

zation could not get along without railroads. Every intelligent person knows that the highways cannot be used as freely where they cross railroad tracks as where there are none. On the other hand the railroads must recognize the existence of the public streets and the uses to which they are put. The users of the highways and of the railroads have mutual rights and mutual duties which must alike be observed. If an enforcement of the State laws as to the movement of trains over streets and highways is not sufficient to safeguard those using the streets of the city of Flint, they may be supplemented by the enactment and enforcement of reasonable ordinances and by the maintenance of gates and the keeping of watchmen at the street crossings as may be required by the public utilities commission.

The decree is reversed and one may be entered here in accordance with this opinion, with costs in favor of the defendant.

Bird, C. J., and Steere, Brooke, Fellows, Stone, and Kuhn, JJ., concurred.

The late Justice Ostrander took no part in this decision.