DETROIT UNITED RAILWAY *v.* BARNES PAPER CO.

STATUTES—IMPLIED REPEAL—STREET RAILWAYS—EMINENT DOMAIN
—ELEVATING TRACKS.

> Act No. 133, Pub. Acts 1905, purporting to amend section 6446,
> 2 Comp. Laws, and conferring the power of eminent domain
> upon street railroad companies, did not repeal Act No. 101 of
> the same session, which purported to amend the same com-
> piler's section and contained a proviso limiting the manner
> in which municipalities could authorize street railroads to
> cross streets, highways, or other railways, not contained in
> said Act No. 133; the two acts not being inconsistent, and
> the later act making no reference to the earlier one.

Certiorari to Oakland; Smith, J. Submitted June 19,
1907. (Docket No. 47.) Decided October 4, 1907.

Condemnation proceedings by the Detroit United Rail-
way against the Barnes Paper Company. There was an
order dismissing the petition, and petitioner brings cer-
tiorari. Affirmed.

*Brennan, Donnelly & Van De Mark* and *James H.
Lynch*, for petitioner.

*Davis & Bromley*, for respondent.

MOORE, J. The petitioner is a corporation engaged in
the operation of electric railways, both city and suburban.
One of its lines runs from the city of Detroit to the city of
Flint, passing through the village of Rochester, crossing
the Air Line division of the Grand Trunk Railroad in the
village on a wooden trestle.

The relator filed its petition in the circuit court for the
county of Oakland for the purpose of condemning certain
lands of the Barnes Paper Company, a Michigan corpora-
tion doing business at the village of Rochester, which com-
pany and its attorneys filed certain objections and an an-

swer to the petition.    After a hearing the circuit judge filed written findings on the objections made and dismissed the petition.    This is a proceeding to review his action.

The reasons for the ruling of the court may be grouped under six heads:

1. That the failure to publish the ordinance within one week of its passage is jurisdictional and fatal.

2. That the petitioner has no right to construct an embankment on the easterly portion of the highway.

3. That the petitioner is not entitled under the laws of this State to maintain proceedings for the condemnation of land.

4. That the company, having once located its track, cannot change the same.

5. That under the laws of the State of Michigan the village had no authority to grant the right to the company to construct an embankment in the highway, but were limited to authorize the construction of a trestle.

6. That the petitioner does not seek to take all the lands owned by the respondent that would be necessary to take if the improvement is made.

In our view of the case it will not be necessary to consider all these reasons.    The record discloses that the first ordinance given by the village of Rochester to build the street railroad through said village, which was passed on January 2, 1899, provided for a grade crossing, across the tracks of the Air Line division; that after this ordinance was passed it was found impossible to build the road across that thousand feet and across the tracks of the Air Line division at grade, because the State railroad crossing board refused to give its consent.    This action brought about the passage of another ordinance which may be called the trestle ordinance, and after its passage 1,000 feet of track was laid on a trestle, and is the track upon which the company is now running its cars.

In February, 1906, the village council undertook by ordinance to allow the relator to build an embankment to take the place of the trestle.    To make the embankment the relator proposes to use about 30 feet off the east side of Main street and about 90 feet of land, 1,000 feet long,

belonging to the Barnes Paper Company, lying adjoining and east of the street, and make a fill of earth thereon about 1,000 feet long and from 10 to 30 feet high and lay its railway tracks thereon, which would bring the said tracks somewhat easterly of where they now are, leaving openings in such embankment for the two streets, the Clinton river, and the tracks of the Air Line division, at which place the trestle is now 22 feet high in the clear.

The relator claims the village had the right to authorize it to make the embankment by reason of the provisions of Act No. 133 of the Public Acts of 1905, and that said act repealed Act No. 101 of the same session. Both of these acts purport to amend section 6446, 2 Comp. Laws. Act No. 133 does not, in its title or in the body of the act, refer to Act No. 101, nor does its title mention the subject of eminent domain. Act No. 101 contained the following provisions:

"*And provided further,* That this section shall confer no authority to construct and operate elevated railways so-called, but shall only give to municipalities the right to authorize the construction and operation of street railways above the streets and highways by means of trestles, at points where such construction and operation are deemed to be necessary by reason of such railway crossing highways, streets or other railways. * * * Nothing in this section contained shall be in any way construed so as to in any way affect any rights which abutting property owners may have to damages or additional damages by reason of the erection or maintenance of trestles or other structures above the streets heretofore or hereafter erected or maintained under this section."

Act No. 101 was approved May 10, 1905, and was given immediate effect. Act No. 133 did not contain the proviso limiting the manner in which municipalities could authorize street railways to cross streets, highways, or other railways, but did provide that street railways should have the right and power of eminent domain. This act also took immediate effect.

It is claimed the act which was passed latest repealed the other. We do not think this necessarily follows. The acts were passed by the same legislature in the same month, and were given immediate effect. One of them confers upon the village councils the right to give roads like the relator certain privileges, but expressly limits their powers in certain ways. In the last act no reference is made to the first act, nor is there any reference made to these limitations. We do not think there is anything so inconsistent in the two acts as to have the effect of repealing the limitations contained in the first act. Having reached this conclusion, we think it unnecessary to discuss the other questions raised.

Judgment is affirmed, with costs to the respondent.

BLAIR, MONTGOMERY, OSTRANDER, and HOOKER, JJ., concurred.