[No. 21676.   Department One.   August 19, 1929.]

SPOKANE COUNTY, *Respondent*, v. CERTAIN LOTS IN CITY OF SPOKANE, *Defendants*, THE CITY OF SPOKANE, *Appellant.*[1]

[1]Reported in 279 Pac. 724.

J. M. Geraghty and Alex M. Winston, for appellant.

Chas. W. Greenough and A. O. Colburn, for respondent.

FULLERTON, J.—The legislature of the state of Washington, at its extraordinary session of 1925-1926, passed two separate acts relating to lands acquired by a county under general tax foreclosure sales. In the order in which they appear in the official publication of the laws of that session, they are designated as chapter 170 and chapter 171 of the Laws of 1925, Ex. Ses., pp. 470, 472 (Rem. 1927 Sup., §§ 9393, 11308-1). Both acts originated in the senate. The first of the mentioned acts was passed by that body on December 31, 1925, was passed by the house of representatives on January 6, 1926, was signed by the presiding officers of both bodies of the legislature on January 7, 1926, and was approved by the governor on January 18, 1926. It is an amendment of a pre-existing statute, and reads, in so far as it is material to the present controversy, as follows:

"In any case where any property shall be struck off to or bid in by the county at any sale for general taxes, and such property shall subsequently be sold by the county, the proceeds of such sale shall first be applied to discharge in full the lien or liens for general taxes for which the same was sold, and the remainder, or such portion thereof as may be necessary, shall be paid to the city to discharge all local assessment liens upon such property, and the surplus, if any, shall be distributed among the proper county funds: Provided, That in any case where property subject to local improvement assessments, or taken over by a city or town on foreclosure of local improvement assessments,

shall have been struck off to or bid in by any county at a sale for general taxes, the city or town levying such assessments may, at any time before resale by the county, redeem such property from the lien of general taxes upon payment of the face of such taxes with costs without penalty or interest: Provided, further, That where any city or town shall have bid in any property on sale for local improvement assessment, such city or town may redeem the property so bid in from the lien of any outstanding general taxes, where no certificates of delinquency have been issued to private persons, upon payment of the face of such taxes with costs, without penalty or interest." Rem. 1927 Sup., § 9393.

The second of the mentioned acts, after its passage by the senate and transmission to the house of representatives, was amended by that body and was passed as amended on January 5, 1926. On its return to the senate, that body, on January 6, 1926, passed the act as amended. It was signed by the presiding officers of the legislature on January 7, 1926, and was approved by the governor on January 18, 1926. The act is too extended to be set forth here at length. Its ultimate purpose is to empower a county, by a procedure in the superior court, to quiet its title to such lands as it has acquired at a general tax foreclosure sale. By the act, the county is given authority to include in one action all tracts of land where there is a defect in the foreclosure proceeding, or where there is an adverse claim to the property. It is provided that the action shall be an action *in rem,* and that the summons and notice prescribed by the act shall be served by publication in the official newspaper of the county, except in cases where a tract described in the summons and notice is in the actual, open and notorious possession of some person or corporation, in which case the summons and notice shall be personally served.

Section 3 of the act provides that, where there are outstanding local improvement assessments against any of the real property described in the notice and summons, a copy of the notice and summons shall be served on the treasurer of the city or town within which such real property is situated within five days after such summons and notice is filed. The same section further provides that the notice and summons shall require all persons, firms and corporations claiming any right, title or interest in or to the lands described therein to appear within a specified time,

". . . and state in writing what right, title and interest they have or claim to have in and to the property described and file the same with the clerk of the court. . . . and shall notify them that in case of their failure so to do, judgment will be rendered determining that the title to said real property is in the county free from all existing adverse interests, rights or claims whatsoever." Rem. 1927 Sup., § 11308-3.

Sections 4 and 5 of the act read in part as follows:

"Sec. 4. Any person or corporation who or which may have been entitled to redeem the property involved prior to the issuance of the treasurer's deed to the county, and his or its successor in interest, shall have the right, at any time after the commencement of, and prior to the judgment in the action authorized herein, to redeem such property by paying to the county treasurer the amount of the taxes for which the property was sold to the county, and the amount of any other general taxes which may have accrued prior to the issuance of said treasurer's deed, together with interest on all such taxes from the date of delinquency thereof, respectively, at the rate of twelve per cent per annum, and by paying for the benefit of the assessment district concerned the amount of principal, penalty and interest of all special assessments, if any, which shall have been levied against such property and by paying such proportional part of the costs of the tax foreclosure proceedings and of the action herein

authorized as the county treasurer shall determine. (Rem. 1927 Sup., § 11308-4.)

"Sec. 5. At any time after the return day named in the summons and notice the county shall be entitled to apply for judgment. In case any person has appeared in such action and claimed any interest in the real property involved adverse to that of the county, such person shall be given a three days' notice of the time when application for judgment shall be made. The court shall hear and determine the matter in a summary manner similar to that provided in section 11298 of Remington's Compiled Statutes, relating to judgment and order of sale in general tax foreclosure proceedings, and shall pronounce and enter judgment according to the rights of the parties and persons concerned in the action." Rem. 1927 Sup., § 11308-5.

Section 8 of the act grants the right of appeal to the supreme court to anyone feeling aggrieved by the decision of the superior court.

Section 9 provides:

"The judgment rendered in such action, unless appealed from within the time prescribed herein and upon final judgment on appeal, shall be conclusive, without the right of redemption upon and against every person who may or could claim any lien or any right, title or interest in or to any of the properties involved in said action, . . ." Rem. 1927 Sup., § 11308-9.

Section 10 reads as follows:

"Sec. 10. Nothing in this act contained shall be construed to deprive any city or town, local improvement or special assessment district of its right to reimbursement for special assessments out of any surplus over and above the taxes, interest and costs involved." Rem. 1927 Sup., § 11308-10.

The acts did not take effect as laws at the same time. The first of the mentioned acts was without an emergency clause, and took effect, in virtue of the provisions of the state constitution (Art. II, § 31), ninety

days after the adjournment of the legislature, namely, at twelve o'clock midnight of April 7, 1926. The other contained such a clause and took effect on its approval by the governor, namely, on January 18, 1926.

Pursuant to the provisions of the last mentioned statute, the county of Spokane began proceedings in the superior court of that county to quiet its title to certain lands which it had acquired at general tax foreclosure sales and which came within the designation of the act. The lands were specifically described in the notice and summons, and included therein were various tracts in the city of Spokane against which there were outstanding local improvement assessments levied thereon by that city. The city appeared in the proceedings, and filed (title and verification omitted) the following answer:

"Comes now the city of Spokane, a municipal corporation, and shows unto the court as follows:

"(1) That it is a municipal corporation of the first class of the state of Washington.

"(2) That this answering defendant has a right, title and interest in a portion of the real estate described in the summons and notice herein, in that as to a number of lots, tracts and parcels of land and other property set forth and described in the notice herein there are either local improvement assessments of the city of Spokane upon each of such parcels of property, or there have been local assessments thereon, and the city of Spokane has by proper legal proceedings acquired title thereto.

"WHEREFORE, the city of Spokane prays that if any decree be entered herein, the said decree shall provide that as to any lots, tracts and parcels of land and other property upon which there are either local improvement assessments of the city of Spokane, or there have been local assessments of the city of Spokane thereon and the city of Spokane has by proper legal proceedings acquired title thereto, this answering defendant may redeem the said property in the manner pre-

scribed in chapter 170 of the session laws of the state of Washington of the extraordinary session of 1925 at any time before resale by the county; and that this defendant may have such other and further relief as may to the court seem meet and equitable in the premises, and this answering defendant will ever pray."

The trial court heard the issue, and entered a decree which, after making certain recitals and setting forth the answer of the city in full, continued as follows:

"It further appearing to the court that said purported answer is not in compliance with the requirements of the provisions of chapter 171 of the laws of 1925 governing this proceeding, and said city having offered no other or different or further appearance and electing to stand on the one hereinabove set out and further

"Having heard argument of counsel and being fully advised in the premises, it is hereby

"ORDERED, ADJUDGED AND DECREED that the default of each and every one of the parties named in the summons and notice, and all other persons, firms and corporations, known and unknown, including the city of Spokane, claiming or having a lien upon, or any right, title, interest or estate in or to said lands and tenements, or any lot, tract, part, parcel or portion thereof described in said summons and notice, be, and is hereby entered, and it is

"FURTHER ORDERED, ADJUDGED AND DECREED that full and complete title to any and all of the tracts, lots, and parcels of land, hereinafter described, be, and the same is hereby vested in the county of Spokane, free and clear of any liens, rights or claims whatsoever, including those of the city of Spokane, and any and every right of redemption by any and all persons whomsoever, including minors, the city of Spokane, and the other cities, towns and municipal corporations named in the title hereto, insane persons and those convicted of crime, and also any and all persons who may have been, or who now are, in actual, open and notorious

possession of any of said real estate, be and the same are hereby cancelled and held for naught.''

The remainder of the decree consists of a description of the several tracts of land affected by it. From the decree, the city of Spokane appeals.

Waiving the question of the sufficiency of the answer of the city, the questions involved on the appeal are two, namely, whether the acts are necessarily conflicting, and, if they are conflicting, which of them must prevail over the other. The respondent, county of Spokane, devotes its entire argument to the first of the questions. We quote from the brief of its learned counsel:

''In the first place the two laws are not *pari materia.* Chapter 171 relates to quieting title on county property against all outstanding claims. Chapter 170 relates to and grants a right of redemption to the city from a county sale. They do not conflict any more than statutes of limitation conflict with those granting the rights to which the limitations apply. Chapter 171 may, and undoubtedly does limit the rights granted under Chapter 170 just as it limits and cuts off the rights of minors and insane persons granted by § 119, chap. 130 of the Laws of 1925, . . .''

And again:

''Chapter 171 does not repeal any provisions of chapter 170. It merely provides a means by which the county can put an end to the outstanding lien or redemption right of the city so far only as the property is concerned that is incorporated in the proceedings. Any property owned by the county not foreclosed upon is still subject to redemption by the city under chap. 170. No damage is done by 171 to 170 until the county starts it in motion and then only so far as the property described is concerned. The city still has the right to redeem under chap. 170 until that right is determined by the starting in motion the limiting and barring power of 171. The above is the only interpretation of the relation of the two statutes pos-

sible under appellant's own authority that 'the courts . . . will exhaust all the resources of interpretation before coming to a conclusion that there is an irreconcilable repugnancy between them,' and 'such construction should be given, if possible, as shall leave all to stand.' To concede appellants point requires an alteration of 171—a reading of an exception into it that is not there, nor intended to be there.''

The appellant, city of Spokane, on the other hand, contends that, since both the acts were passed at the same session of the legislature and relate to the same subject-matter, they must be interpreted as being in *pari materia* and given a construction that will give effect to each, if possible; arguing in this connection, first, that the acts can be given a construction that will give effect to the provisions of each, and, second, that, if this conclusion be incorrect, the court must construe them so as to carry into effect what appears to be the main intention of the legislature; further arguing that this main purpose is indicated by the act known as chapter 170, Laws of 1925, Ex. Ses., p. 470.

But we cannot approve in their entirety either of these contentions. That the acts are conflicting in their provisions, we think can hardly admit of doubt. The one grants to the city a right to redeem from a tax foreclosure sale, where the property is acquired by the county at such sale, up to the time of the happening of a certain fixed event. The other provides a means by which the granted right may be cut off by the county prior to the happening of the fixed event. Clearly, effect cannot be given to the provisions of both of these statutes. Necessarily, if effect be given to one according to its terms, the other is superseded.

Nor can we follow the conclusions of the appellant city. We may concede the rule that statutes passed at the same session of the legislature relating to the same subject-matter are to be regarded and construed

as being in *pari materia.* But the rule does not aid in this instance. If we read and construe the acts as one, we do not eliminate the conflicting provisions, and the query still arises, which of the conflicting provisions shall be allowed to prevail. Nor are we aided by the second of the principles suggested. There is nothing in the acts themselves which indicates what was the main purpose of the legislature in enacting them. The one is no more special than the other, and the conditions inducing their passage, in so far as we may take knowledge of them judicially, do not indicate that the one was regarded by the legislature as being of more importance than the other, except such as may arise from the fact that the legislature attached to one an emergency clause which they did not to the other.

There are special rules to which the courts resort for the purpose of determining which of two conflicting acts, passed at the same session of the legislature, will be allowed to prevail when the more general rules are inapplicable. One of such rules is that effect will be given to the act latest in time, and to this rule we have ourselves given approval. *Whitfield v. Davies,* 78 Wash. 256, 138 Pac. 883. Other courts have held that the last act approved by the governor will be given effect. *Peavy v. McCombs,* 26 Idaho 965, 140 Pac. 965; *Ex parte James,* 4 Okl. Cr. 94, 111 Pac. 947; *State v. Davies,* 70 Md. 237, 16 Atl. 529. Still others have held that the one going into effect last will prevail. *State ex rel. Garrett v. Sawyer,* 139 Ala. 138, 36 South. 545; *Harrington v. Harrington's Estate,* 53 Vt. 649; *State ex rel. Bauer v. Edwards,* 136 Mo. 360, 38 S. W. 73.

But none of these rules, with the possible exception of the last, can be applied to the conditions here shown. By a somewhat curious coincidence, both of these acts were passed by the legislature on the

same day, both were authenticated by the signatures of the presiding officers of the two branches of the legislative body on the same day, and both were approved by the governor of the state on the same day. The first of the stated rules is therefore inapplicable, because of the manifest impossibility of determining which is latest in time. The second is inapplicable for a similar reason. The third is more to the point, since the acts went into effect on different days. But in *Heilig v. City Council of Puyallup*, 7 Wash. 29, 34 Pac. 164, we gave effect to the contrary rule. In that case it appeared that the legislature, in 1893, passed two conflicting acts on the same subject-matter. While the acts were passed on different days, they were approved by the governor on the same day. The act latest in time had an emergency clause, and went into effect on its approval by the governor. The other act was without such a clause, and went into effect three months later. We gave effect to the statute containing the emergency clause which went into effect first, and gave as one of the reasons for so doing the following:

"But we are also of the opinion that where two conflicting acts upon the same subject-matter are passed at the same session of the legislature, and their conflict is such that they cannot be harmonized and stand together, and one of them contains an emergency clause and the other does not, that one containing the emergency clause must be taken to overcome the other. The simple fact of there being an emergency clause would tend to show that the subject-matter of the act was more clearly and pointedly before the legislature than the subject-matter of the other act."

It may be that the rule here announced cannot be one of uniform application, as instances can be readily conceived where its application would tend to thwart, rather than give effect to, the legislative will. But the present case does not present an instance of this sort,

and we feel constrained to follow the rule as controlling in any instance to which it is directly applicable, and where to apply it will not conflict with the more general rules of statutory construction.

It may be added that the rule was approved and followed by the court of appeals of Kentucky in the case of *Lambert v. Board of Trustees of Public Library,* 151 Ky. 725, 152 S. W. 802, and by the supreme court of Indiana in *Peoples Trust & Savings Bank v. Hennessey,* 153 N. E. (Ind. App.) 507.

The conclusion requires an affirmance of the judgment of the court below, and an affirmance is ordered.

MITCHELL, C. J., HOLCOMB, BEALS, and TOLMAN, JJ., concur.