[No. 28765. *En Banc.* December 18, 1942.]

THE STATE OF WASHINGTON, *on the Relation of Ray F. Gebhardt et al., Plaintiff,* v. THE SUPERIOR COURT FOR KING COUNTY, *Roger Meakim, Judge, Respondent.*[1]

[1]Reported in 131 P. (2d) 943.

674

*Edwards Merges,* for relators.

*B. Gray Warner, Wm. Hickman Moore, Solie M. Ringold,* and *Arthur G. Barnett,* for respondent.

*Weter, Roberts & Shefelman, amici curiae.*

JEFFERS, J.—Ray F. Gebhardt, Marvel Morris, and Cora Fenton instituted an action in the superior court for King county, against Eustis H. Loomis, Elwin H. Scheyer, and Earl G. Rice, as directors of Bothell school district No. 46, William H. Beardsley, and Nina O. Buchanan, King county superintendent of schools, to enjoin the latter, as such superintendent, from approving and recording a contract entered into between the school district and defendant Beardsley, and further to enjoin the directors of the school district from further attempts at execution of a contract for the employment of a superintendent of Bothell schools, asking that such injunction remain in force until such time as the appeal of Maurice J. Thomas from the action of the above-named directors in terminating his employment as superintendent of Bothell schools be finally determined.

In so far as material to the questions presented, the complaint, as supplemented by stipulation, in substance alleges: That plaintiffs are residents and taxpayers in Bothell district No. 46, and that defendants

Loomis, Scheyer, and Rice are the directors of the district, and Nina O. Buchanan is the duly elected and qualified King county superintendent of schools; that in July, 1937, Maurice J. Thomas was duly and regularly appointed to the position of superintendent of Bothell schools, and thereafter assumed his duties as such superintendent, and has since continued in this capacity at a salary of $3,800 per year; that, on March 30, 1942, at a meeting called for that purpose, defendants Loomis and Scheyer, as directors of the district, voted to terminate the employment of Mr. Thomas on June 30, 1942; that, on the evening of April 7, 1942, defendants Loomis and Scheyer called a meeting of the directors for the purpose of hiring defendant William H. Beardsley as superintendent of Bothell schools, to succeeed Mr. Thomas; that at this meeting it was voted to employ Mr. Beardsley as superintendent for the years 1942-1943 and 1943-1944, and the board, over the objections of defendant Rice, immediately executed a contract for such employment.

It is further alleged that no reasons were given by defendants Loomis and Scheyer for their action in terminating Mr. Thomas's employment, and that Mr. Thomas and Mr. Rice have appealed to the county superintendent of schools from the action of the board in discharging Thomas, which appeals are now pending. Copies of the notice of appeal and Mr. Rice's affidavit on appeal are attached to, and by reference made a part of, the complaint.

It is also alleged that the attempted hiring of Beardsley by defendants Loomis and Scheyer is about to be approved by Nina O. Buchanan, and that, if the contract is so approved and if the appeal of Thomas is sustained, the school district may be liable for the salaries of both Thomas and Beardsley for the year 1942-1943, which salaries would aggregate seven thousand dol-

lars, and plaintiffs, as taxpayers of the district, and all other taxpayers of the district would be greatly damaged thereby.

It may be stated that there are other allegations in the complaint relative to the desire of the people within the district to retain Mr. Thomas as superintendent, and in regard to his general qualifications and the manner in which he has performed his duties while superintendent. These allegations are not material herein.

It is not claimed on this appeal that the action of Loomis and Scheyer was not the action of the board, nor is any question raised as to the legality of the meetings at which it was attempted to terminate the employment of Mr. Thomas and employ Mr. Beardsley. Both of the appeals from the board's action to the King county superintendent of schools were primarily based upon the alleged failure of the board to give sufficient and adequate reasons for the dismissal, as required by chapter 42, p. 100, Laws of 1941. It is specifically set out in the appeal notices that chapter 42, Laws of 1941, was not repealed or superseded by chapter 179, p. 512, Laws of 1941, and argument is made on this question.

To the complaint, as supplemented by the stipulation, defendants demurred on three grounds:

"1. That the court has no jurisdiction of the persons of the defendants or of the subject matter of the action;

"2. That the plaintiffs have no legal capacity to sue;

"3. That the complaint does not state facts sufficient to constitute a cause of action."

On May 1, 1942, after argument by counsel for the respective parties, the court entered an order sustaining the demurrer and dismissing the action. The material part of this order is as follows:

"It is now, therefore, ordered, adjudged and decreed that the demurrer of the defendants to the complaint of the plaintiffs herein, as amended by stipulation of counsel, be and the same is hereby sustained, and the plaintiffs refusing to plead further and resting upon the allegations of their complaint, it is further

"Ordered, adjudged and decreed that the above entitled action be and the same is hereby dismissed with prejudice; for the reason that chap. 42, Laws of 1941, is not in effect."

On the same day, Ray F. Gebhardt, Marvel Morris, and Cora Fenton, as relators, filed in this court their application wherein they petitioned this court for a writ of certiorari to review the action of the trial court. Upon the filing of this application and an accompanying affidavit of Ray F. Gebhardt, a show cause order was issued by this court, directed to Honorable Roger Meakim, commanding him to certify to this court on May 22, 1942, a full and complete transcript of the proceedings in cause No. 334717, or in the alternative to show cause why he should not do so. Judge Meakim has certified the record to this court, and it is now before us.

Petitioners state that there are five questions to be answered:

"1. Does the court have jurisdiction of the defendants?

"2. Have the plaintiffs legal capacity to sue?

"3. Is the appeal of Thomas properly taken?

"4. Is the Thomas appeal supported by law?

"5. If the Thomas appeal is sustained, would the district be liable for the salaries of both Thomas and Beardsley?"

The questions in this case, as we see them, may be answered by a determination of whether or not chapter 42, Laws of 1941, is a valid and existing law. We make this statement for the reason that relators sought to enjoin the county superintendent from approving

the Beardsley contract on the theory that the board of directors had unlawfully terminated the Thomas contract, because the board had failed to state reasons for such termination, as required by chapter 42, Laws of 1941; that Thomas has appealed from the action of the board, and, if his appeal is sustained and the Beardsley contract approved, the district will be liable to pay the salaries of two superintendents, and relators, as taxpayers, will be damaged thereby. We again call attention to the fact that the only unlawful action which it is alleged the board committed is a claimed failure to comply with chapter 42, Laws of 1941. It would seem to follow, then, that, at least in the first instance, whether or not relators had shown a sufficient interest to entitle them to bring this action, and whether or not the complaint states facts entitling them to any relief, depend upon the validity of chapter 42, *supra*.

The question as to the validity and effectiveness of chapter 42, Laws of 1941, arose from the following circumstances: During the 1941 session of the legislature, chapters 42 and 179 were passed, both acts purporting to amend § 1, chapter 131, Laws of 1939, but neither act in any way referring to the other.

Relators contend that chapter 42 was not repealed or affected by the subsequent passage of chapter 179, while respondents' argument is that chapter 42 never became effective, because of chapter 179.

Permission was given for a brief to be filed by *amici curiae*. This brief deals entirely with the question of whether or not chapter 42 was repealed or in any way affected by chapter 179. Frankly, it is apparent that the action sought to be reviewed is, in reality, a suit to compel the board of directors to retain Mr. Thomas as superintendent.

It is a well-established general rule that courts

will not by injunction interfere with the exercise of discretionary powers conferred by the state upon municipal corporations, acting through their duly appointed officers, merely because such action may be unwise, extravagant, or a mistake of judgment. 28 Am. Jur. 359, § 170.

It is also a well-recognized rule that to entitle a person to institute a cause of action he must show that he has some real interest therein. His interest must be a present, substantial interest, as distinguished from a mere expectancy, or future, contingent interest, and he must show that he will be benefited by the relief granted. 39 Am. Jur. 860, § 10.

It is also a well-recognized principle that public wrongs or neglect or breach of public duty cannot be redressed in a suit in the name of an individual or individuals whose interest in the right asserted does not differ from that of the public generally, or who suffers injury in common with the public generally. However, a taxpayer may seek relief in equity against a public wrong which results in imposing an additional burden on the taxpayers. 39 Am. Jur. 864-865, § 11.

The question of whether a taxpayer may invoke the aid of a court of equity to enjoin a public official presents its difficulties. However, it seems to be generally held that the taxpayer may maintain an action to prevent the illegal disposition of money of a municipality or school district, or the illegal creation of a debt which he, with other property owners and taxpayers in such district, may be compelled to pay. The liability to pay taxes, in itself, constitutes a special interest. 24 R. C. L. 597-598, § 52.

While it may be doubtful as to whether or not relators have alleged sufficient facts to entitle them to relief in a court of equity, still we have decided to review this record, in view of the contention made

relative to chapter 42, *supra*. We feel justified in so doing, in view of the importance such a decision may have to all the teachers and school directors in the state.

Chapter 131, p. 375, Laws of 1939, is entitled:

"An Act relating to and prescribing the powers and duties of boards of directors for public schools, providing for education of physically handicapped adults, providing funds therefor and amending section 4776, Remington's Revised Statutes."

Section 1, of chapter 131, contains thirteen subdivisions. Subdivision 1, in so far as material to this discussion, provides:

"Every board of directors, unless otherwise specially provided by law, shall have power and it shall be its duty:

"First: To employ for not more than one year, and for sufficient cause to discharge teachers, . . ."

Chapter 42, Laws of 1941, passed the house, February 4, 1941, the senate, February 26, 1941, and was approved by the governor, March 5, 1941. It had no emergency clause. The chapter is entitled:

"An Act relating to education; prescribing the powers and duties of boards of directors of school districts, and amending section 1, chapter 131, Laws of 1939 (section 4776 of Remington's Revised Statutes)."

Section 1 provides:

"That section 1, chapter 131, Laws of 1939 (section 4776 of Remington's Revised Statutes), be amended to read as follows:

"Section 1. Every board of directors, unless otherwise specially provided by law, shall have power and it shall be its duty: . . ."

Then follows the same provision contained in the first subdivision of § 1, chapter 131, *supra*. The first subdivision under § 1, chapter 42, then contains the

following provision, which is the part added by the 1941 amendment:

"Every teacher, principal, supervisor or superintendent holding a position as such with a school district, whose employment contract is not to be renewed by the district for the next ensuing term *shall be notified in writing on or before April 15th preceding the commencement of such term of the decision of the board of directors not to renew his or her employment and the reason or reasons therefor,* and if such notification is not timely given by the district, the teacher, principal, supervisor or superintendent entitled thereto shall be conclusively presumed to have been reemployed by the district for the next ensuing term upon contractual terms identical with those which would have prevailed if his or her employment had actually been renewed by the board of directors for such ensuing term: *Provided,* That in union high school districts said written notification shall be given on or before April 30th preceding the commencement of the next ensuing term." (Italics ours.)

Except for the added portion, § 1, chapter 131, Laws of 1939, was not changed, and § 1, chapter 131, Laws of 1939, was set out in full, with the amendment, as chapter 42, Laws of 1941, as required by Art. II, § 37, of the state constitution, which provides:

"No act shall ever be revised or amended by mere reference to its title, but the act revised or the section amended shall be set forth at full length."

Chapter 179, Laws of 1941, passed the house, February 6, 1941, the senate, March 11, 1941, and was approved by the governor, March 24, 1941. It contained an emergency clause and became effective at once. This chapter is entitled:

"An Act relating to school directors, increasing their powers and providing for the joint purchase of supplies, equipment and services, and amending section 1, chapter 131, Laws of 1939 (section 4776 of Remington's Revised Statutes), and declaring an emergency."

Section 1 provides:

"Section 1, chapter 131, Laws of 1939 (section 4776 of Remington's Revised Statutes) is amended to read as follows: . . ."

Then follow the identical provisions contained in § 1, chapter 131, Laws of 1939, omitting the amended portion contained in chapter 42, Laws of 1941, but adding as subdivision 14, a provision as follows:

"Fourteenth: To join with Directors of other school districts in buying supplies, equipment and services collectively by establishing and maintaining a joint purchasing agency or otherwise, when the Directors deem it for the best interests of the district."

It will thus be seen that § 1, chapter 179, Laws of 1941, which, so far as is apparent to us, is a complete section, taking the place of § 1, chapter 131, Laws of 1939, omits therefrom and makes no reference to chapter 42, Laws of 1941, or the amended portion of chapter 42.

In arriving at a proper solution of the question of whether or not chapter 42 was by implication repealed by chapter 179, or whether or not chapter 42 never became effective, by reason of the passage of chapter 179, relators and *amici curiae* state that the following well-recognized rules should be considered: (1) Repeals by implication are disfavored. (2) When two acts are seemingly repugnant, they should be construed, if possible, so that the latter will not operate as a repeal or modification of the former. (3) If by the application of every reasonable rule of construction substantial harmony is found possible, then there is no irreconcilable conflict. (4) The presumption is especially strong against an implied repeal of an act by another act of a later date at the same session of the legislature. (5) There is no inference that one act was intended to destroy another, if they are on the

same subject matter, and enacted at the same meeting of the legislature, but, on the contrary, they should be construed, if possible, to give full effect to each. (6) The purpose of all rules of statutory construction is to ascertain the legislative intent.

We are in full accord with the above rules as abstract principles of law, but of course any principle of law, to be available to a party litigant, must be applicable to the facts involved. Many cases are cited by relators and *amici curiae* to sustain the above principles and their contentions as to the applicability of such principles. However, a good many of the cases do not deal with an attempt by the same legislature to amend the same section of a prior act, as was attempted in the instant case, but rather with a claimed repeal caused by a subsequent independent act.

Much stress is laid upon the fact that the amendments contained in chapter 42 and chapter 179 are not inconsistent, but deal with different subjects, and the contention is made that it is reasonable to suppose that what the legislature intended was to add to § 1, chapter 131, Laws of 1939, the amended portion contained in chapter 42 and the amended portion contained in chapter 179, and there being no express repeal of chapter 42 contained in chapter 179, it was not intended by chapter 179 to repeal or make ineffective chapter 42.

There is a world of authority on the question generally of repeals by implication, especially as to the effect of *later independent acts upon former acts,* but the authority is quite limited as to situations such as presented in the instant case. We are of the opinion that Art. II, § 37, of our constitution, must play an important part in a determination of the question presented. This constitutional factor does not appear to

have been considered in many cases cited by the parties hereto.

█ The section of our constitution above referred to was undoubtedly framed for the purpose of avoiding confusion, ambiguity, and uncertainty in the statutory law through the existence of separate and disconnected legislative provisions, original and amendatory, scattered through different volumes or different portions of the same volume. Such a provision, among other things, forbids amending a statute simply by striking out or inserting certain words, phrases, or clauses, a proceeding formerly common, through which laws became complicated and their real meaning often difficult of ascertainment. The result desired by such a provision is to have in a section as amended a complete section, so that no further search will be required to determine the provisions of such section as amended.

█ We held in *Whitfield v. Davies,* 78 Wash. 256, 138 Pac. 883, that the legislature may amend an original act which has been amended, and disregard the intervening act.

█ In *Henry v. McKay,* 164 Wash. 526, 3 P. (2d) 145, 77 A. L. R. 1025, we stated:

"Chapter 113, Laws of 1931, p. 341, specifically amends a designated section (§ 83) of a general act 'to read as follows.' The adoption of the amendatory statute is in effect a repeal of the act amended.

" 'An amendatory act has a repealing force, by the mechanics of legislation, different from that of an independent statute. Repugnancy is not the essential element of implied repeal of specifically amended sections. The rule is: "Where a section of a statute is amended, the original ceases to exist, and the section as amended supersedes it and becomes a part of the statute for all intents and purposes as if the amendments had always been there." 25 R. C. L. 907.' *People v. Lowell,* 250 Mich. 349, 230 N. W. 202.

" 'Where a section of a statute is amended by an act which purports to set out in full all it is intended to contain, any matter which was in the original section but not in the amendatory section is repealed by the omission.' *Spokane & Eastern T. Co. v. Hart,* 127 Wash. 541, 221 Pac. 615."

■ We have also expressed our opinion relative to an emergency clause, in the following language in *Spokane County v. Certain Lots in Spokane,* 153 Wash. 462, 279 Pac. 724, quoted from the early case of *Heilig v. City Council of Puyallup,* 7 Wash. 29, 34 Pac. 164:

" 'But we are also of the opinion that where two conflicting acts upon the same subject-matter are passed at the same session of the legislature, and their conflict is such that they cannot be harmonized and stand together, and one of them contains an emergency clause and the other does not, that one containing the emergency clause must be taken to overcome the other. The simple fact of there being an emergency clause would tend to show that the subject-matter of the act was more clearly and pointedly before the legislature than the subject-matter of the other act.' "

We also stated in *Bierer v. Blurock,* 9 Wash. 63, 36 Pac. 975:

"Under the provisions of § 37 of art. 2 of our constitution, a section of an act cannot be amended by any reference thereto, but such amendment must be by setting forth the amended section at full length. It must follow that whenever the legislature provides, as it did in the above stated amendment, that a certain section of a law shall be amended 'so as to read as follows,' that the effect of such act is to substitute the language of the amended section in place of the section amended, and to repeal every provision of the old section.

"Such being the effect of the passing of the amendatory section, it took the place of the old section and repealed all of its provisions not contained in the section as amended."

■ While the amendments found in chapters 42 and 179 are not in themselves inconsistent, § 1, chapter 131, Laws of 1939, as amended by chapter 179, Laws of 1941, is certainly in conflict with § 1, chapter 131, Laws of 1939, as amended by chapter 42, Laws of 1941. In view of our constitutional provision, and in view of our holdings relative to the effect of an amendment, it is impossible for us to conclude that chapter 42 and chapter 179 may both stand, and we think it follows that chapter 179, being enacted after chapter 42, and having an emergency clause, became the law, and that chapter 42 never became effective.

Our ideas are so fully expressed in the case of *State ex rel. Brady v. Lightner*, 77 Ore. 587, 152 Pac. 232, that we shall quote therefrom. In the cited case, relator sought by mandamus to compel the county commissioners to constitute the city of Portland a separate road district, pursuant to § 6313, Lord's Oregon Laws, as amended by § 1, chapter 127, p. 133, General Laws of Oregon, 1915. The commissioners declined to take this action, on the ground that § 6313 as amended by a later act of the same session (chapter 194, p. 255) gave the board authority to divide the county into "suitable and convenient road districts," without any limitation as to their extent. Chapter 127, Laws of 1915, was filed in the office of the secretary of state, February 23, 1915, at eight-thirty a. m. Section 1 provides, in part:

"That section 6313 of Lord's Oregon Laws as amended by chapter 122 of the General Laws of 1913, be and the same is hereby amended so as to read as follows: . . ."

Chapter 194, Laws of 1915, which was filed in the office of the secretary of state, February 23, 1915, at nine-fifty-five a. m., after chapter 127, amended the law of 1913 by substituting the September for the

October term, and omitting the proviso requiring incorporated cities to be constituted into separate road districts, as provided in chapter 127. Section 1 of chapter 194 reads in part as follows:

"That section 6313 of Lord's Oregon Laws as amended by chapter 122 of the General Laws of Oregon of 1913 be and the same is hereby amended so as to read as follows: . . ."

It was urged by relator in the cited case that chapter 127, Laws of 1915, was in full force and effect, as it is urged here by relators that chapter 42 is in full force and effect.

In the cited case, it is stated:

"Where two acts are conflicting, the later expression of the legislative will must prevail. It is stated in Lewis' Sutherland Statutory Construction, volume 1, section 247, page 463, as follows:

" 'The repugnancy being ascertained, the later act or provision in date or position has full force, and displaces by repeal whatever in the precedent law is inconsistent with it. Subsequent legislation repeals previous inconsistent legislation whether it expressly declares such repeal or not.' (Citing *Whitfield v. Davies*, 78 Wash. 256, 138 Pac. 883; *Detroit Ry. v. Barnes*, 172 Mich. 586, 138 N. W. 211, overruling *Detroit Ry. v. Barnes*, 149 Mich. 675, 113 N. W. 285.)

"Chapter 127, the first act, purporting to amend Section 6313, *is superseded by the second act as far as there is any difference, because the constitution requires that the act revised or section amended shall be set forth at length in the amendatory act.* If there is anything to be added to Section 6313 as set forth in the last amendatory act, the Constitution is thereby violated. *The prevailing act is necessarily therefore the whole of section 6313.* . . . Amendment of an act or section by setting it out in full 'so as to read as follows' operates as an entire obliteration of the former act after the new one goes into effect. (Citing cases.) The omitted provisions cannot be revived by judicial construction. . . .

"It is settled by the great weight of authority that the act amended, being the last expression of the legislature, is the law. The two are different, and have profoundly different consequences." (Italics ours.)

So in the instant case, § 1, chapter 131, as amended by chapter 42, provides for notice to teachers of a termination of their contracts, the reasons therefor, etc.; § 1, chapter 131, as amended by chapter 179, omits entirely any reference to the above amendatory provision contained in chapter 42.

Continuing with the quotation from the case of *State ex rel. Brady v. Lightner, supra*:

"They prescribe contradictory times for the performance of the acts, and one leaves with the county commissioners a discretion which the other takes away. To add anything to the prevailing act by construction would be a flagrant violation of the constitutional provision that the amendatory act shall set out the section amended 'at length.' *If it can be made larger by a proviso which the court selects for itself out of a previous amendment on the same subject,* it is not set forth at length, and the constitutional provision would be violated. *If the constitution is given any effect, Section 6313 as last amended is all of Section 6313 as it now stands.* There can be but one Section 6313 of Lord's Oregon Laws." (Italics ours.)

So in the instant case, under our constitution, there can be but one § 1, chapter 131, Laws of 1939, as amended.

Continuing with the cited case:

"If the first amendment as passed in 1913, and the last amendment, Chapter 194, had passed just as it reads no one would have contended that the proviso making separate road districts out of cities omitted in the last amendment should be read into it or tacked onto it. The first, having passed at the same session, but prior to the second, does not, in any way, avoid or modify the application of the constitutional inhibition. *It might have been different if the first amend-*

*ment instead of being an attempted amendment of Section 6313, had been an original law without reference to an amendment, but it is not."* (Italics ours.)

In view of our constitutional provision and our decisions, it seems to us the logic of the cited case is unanswerable, and it follows that § 1, chapter 131, Laws of 1939, as amended by chapter 179, Laws of 1941, is now the law, and that chapter 42 never became effective.

We desire to call attention to the case of *People v. Lowell,* 250 Mich. 349, 230 N. W. 202, cited in *Henry v. McKay,* 164 Wash. 526, at 534, 3 P. (2d) 145, 77 A. L. R. 1025, wherein we find this statement:

"It is plain from the authorities in this state and elsewhere that the effect of an act amending a specific section of a former act, in the absence of a saving clause, is to strike the former section from the law, obliterate it entirely, and substitute the new section in its place. This effect is not an arbitrary rule adopted by the courts. It is the natural and logical effect of an amendment 'to read as follows.' It accomplishes precisely what the words import. Any other construction would do violence to the plain language of the legislature."

Considerable is said in the brief of relators and in the brief of *amici curiae* about the intent of the legislature.

A legislative intention, not expressed in some appropriate manner, has no legal existence. Lewis' Sutherland Statutory Construction, p. 745. The legislature is presumed to know the principles of statutory construction.

We also desire to call attention to the case of *Detroit United R. v. Barnes Paper Co.,* 172 Mich. 586, 138 N. W. 211, wherein the supreme court of Michigan, in overruling a former decision, stated:

"The legislature of 1905 passed and gave immediate effect to Acts No. 101 and No. 133. . . . Both

purport to amend 2 Comp. Laws, § 6446, and both pro-
vide that said section shall be amended 'to read as
follows.' In the two acts the *section amended is made
to read very differently. But, however much or little
the difference,* the authorities, agreeable with what
now appears to me to be the clearest reason, regard
the last act as repealing the earlier one, leaving the
section to stand as last amended." (Italics ours.)

*Amici curiae,* in arguing there is no inconsistency be-
tween the amendments made by chapters 42 and 179,
quote from the case of *Mesher v. Osborne,* 75 Wash.
439, 134 Pac. 1092, 48 L. R. A. (N.S.) 917, and stress
the fact that Judge Ellis, in the cited case, laid em-
phasis on the facts that *amendments* contained in the
various statutes there under consideration were not
in conflict and were not irreconcilable.

In citing and stressing the case last above referred
to, it seems to us counsel has failed to distinguish be-
tween a case such as the instant one, where there was
an attempt at the same session to twice amend a former
act, both the amendments stating that the section
amended is "to read at follows," and a case such as
the one cited, where it is claimed that subsequent, in-
dependent acts impliedly repealed a prior independent
act. The rules governing the two situations, at least
where a constitutional provision is present, such as
in this state, are different, for, as we have said, whether
there is in the added part contained in the amendment
any inconsistency, is not material, but the controlling
element must be, what is the effect of the statute as
last amended. If we could amend a section or act by
merely adding a word, phrase, or clause, then it
seems to us counsel's argument would be sound, but
under our constitution and the authorities cited, the
act as amended is complete, and must contain all that
is intended to be in the section as amended.

692

*Amici curiae,* to sustain their contention that where two acts amending the same statute are enacted at the same session of the legislature, each failing to refer to the other, neither is repealed by implication, and the *amendatory* portions of both acts will be given effect, unless they are wholly irreconcilable, cite, in addition to *Mesher v. Osborne, supra, Lewis v. Town of Brandenburg,* 105 Ky. 14, 20 Ky. Law Rep. 1011, 47 S. W. 862. It is true the situation presented in the cited case was very much like that presented in the instant case. We are not in accord with the result reached in the cited case, and, although Kentucky has a constitutional provision like our own, it seems to us the court failed to recognize that, under such a provision, when a section is amended "to read as follows," the section as amended contains all that was intended to be in that section as amended, and the court cannot lift from a prior amendment a portion thereof and say the legislature intended this to be a part of the original section as amended also. We think it must be assumed that the last amendment is the last word of the legislature, and contains the final act of the legislature, and that the act as finally amended supersedes all attempted prior amendments of the original section.

It seems to us the court in the cited case overlooked the reasoning above set out, or did not choose to follow that rule, for it concluded that, in considering the last amendment, even though it stated the section was amended "to read as follows," the prior amendment should be considered.

The case of *Mayor Etc. of Baltimore v. German-American Fire Ins. Co.,* 132 Md. 380, 103 Atl. 980, cited by *amici curiae,* also presents a situation of an attempt by the same session of the legislature to twice amend a prior act, the latter amendment not referring to the first. The court in the cited case made no dis-

tinction between attempts to specifically amend a prior enactment "to read as follows" and a situation where, by a subsequent independent act, a repeal by implication is claimed. The court held that the two amendments, not being repugnant and irreconcilable, should both stand. While the cited case refers to, but does not set out, § 33, Art. III, of the constitution of Maryland, no specific argument appears in the opinion relative to the effect of the constitutional provision upon an attempt at the same session of the legislature to twice amend the same section of a prior act, both amendments providing that the section is amended "to read as follows."

While the Montana case cited by *amici curiae, State ex rel. Hay v. Hindson,* 40 Mont. 353, 106 Pac. 362, reaches the result contended for by relators and *amici curiae* in the instant case, we think it can be distinguished because of the interpretation put upon a constitutional provision of Montana relative to amendments, like our own. Relative to this provision, the court in the cited case said:

"The constitutional provision, however, is a rule of legislative procedure, merely directing how such an amendment can be made. The rule of construction applicable in such a case is found in section 119, Revised Codes, which provides: 'Where a section or a part of a statute is amended, it is not to be considered as having been repealed and re-enacted in the amended form, but the portions which are not altered are to be considered as having been the law from the time they were enacted, and the new provisions are to be considered as having been enacted at the time of the amendment.' "

We have no statutory provision such as § 119, Rev. Codes of Montana, and we are of the opinion our constitutional provision, § 37, Art. II, is mandatory.

We do not pretend to say that it may not be logically argued that there are cases which support the theory of relators and *amici curiae,* relative to the effect of two amendments of the same section, passed at the same session of the legislature, such as was done in the instant case, but we are not in accord with the reasoning of these cases, for the reasons hereinbefore mentioned. Considering, as we do, that chapter 42 never became effective, and it appearing that the only claimed illegal action of the Bothell school board is based entirely upon an alleged violation of chapter 42, it must follow that it does not appear that Mr. Thomas's contract has been unlawfully terminated, and, if it has not, then relators have no basis herein for seeking to enjoin the recording and approval of the Beardsley contract.

We conclude, upon a review of the record, that the demurrer was properly sustained and the action properly dismissed, and the judgment of the trial court must be and is affirmed.

BEALS, STEINERT, BLAKE, and SIMPSON, JJ., concur.

ROBINSON, C. J. (dissenting)—I have no great concern as to the result of the foregoing opinion, for even though it voids the amendatory portion of chapter 42, p. 100, Laws of 1941, relating to the reemployment of teachers, that, if thought unfortunate, can be cured by the coming session of the legislature. But the opinion lays down general rules affecting the mechanics of legislation which seem fraught with consequences not curable by legislation. If the majority opinion be correct, it will be difficult, and in some cases perhaps impossible, to make more than one amendment to an existing act during any one legislative session.

In the present instance, the legislative journals show that house bill No. 66, designed to amend the existing law concerning the reemployment of teachers, and which was ultimately passed as chapter 42, Laws of 1941, and house bill No. 78, designed to amend the existing law to permit school districts to act jointly in purchasing supplies, and which was later passed as chapter 179, Laws of 1941, were introduced in the house on January 24, 1941, by Julia Hansen, chairman of the house committee on education. On that day, both bills were, by vote of the house, referred to that committee, and both were reported back by that committee on January 29, with the recommendation that they do pass. They ultimately went to the senate together. The enabling clauses of the bills were identical:

"SECTION 1. That section 1, chapter 131, Laws of 1939 (section 4776 of Remington's Revised Statutes), be amended to read as follows:"

Each of the bills was drafted with scrupulous regard for § 37, Art. II of the constitution, requiring that an act revised or a section amended shall be set forth at full length. Bill No. 78 had an emergency clause *when introduced.*

Subsequently, due possibly to the fact that bill 78 required a typographical amendment, or possibly, because it bore a higher number, the two bills, which had a common origin and had long traveled together, became separated. Bill 66 was passed by the house on February 4, by the senate on February 26, and, as provided by the constitution, became a law when approved by the governor on March 5, as chapter 42, Laws of 1941. Bill 78 passed the house on February 6, the senate on March 11, and was approved by the governor on March 24, as chapter 179, Laws of 1941. If chapter 42, instead of chapter 179, had been acci-

dentally delayed in the legislative mill, it would, according to the reasoning of the majority, now be the law, and chapter 179 would be invalid.

Clearly, bills Nos. 66 and 78 were not alternative bills. As we have seen, one affected the hiring of teachers; the other, the purchase of supplies by school districts. It was obviously not a case where the committee on education wanted the one change in the law or the other. It wanted both, and the fact that it wanted one of them to become effective immediately, as indicated by the emergency clause in bill 78, is completely immaterial.

What was the committee on education to do in that situation, or rather, what are future legislative committees to do when faced by similar circumstances? If two amendments to a section are contained in two different bills, only that last enacted can, under the majority opinion, survive, no matter if they concern such utterly unrelated things as employing teachers and joint purchase of supplies. It might, of course, be possible to make two amendments to the same section at the same session of the legislature if one could be first introduced and passed, and, then, the second introduced, setting forth the first at full length and adding the desired amendment. But the legislative sessions are too short to admit of such procedure. It has been said that both amendments might have been included in one bill. I would not go so far as to say that, in the instant case, such a procedure would have violated the constitutional provision that "no bill shall embrace more than one subject, . . . " But it would have been contrary to its spirit and wholly repugnant to sound legislative practice; for there might well have been a number of members of the legislature quite favorable to the proposed amendment in regard to the reemployment of teachers, and, yet, so opposed

to the proposed joint purchase of supplies that they would have voted against the joint bill. On the other hand, there might have been members very favorable to joint purchase of supplies, but staunchly opposed to the change regarding reemployment of teachers, and for that reason would vote against a joint bill. Thus, two desirable amendments, which would have passed if submitted separately, would both fail if submitted in a single bill.

From a consideration of the legislative history of chapters 42 and 179, Laws of 1941, a matter but little regarded by the majority, I have no doubt but that the legislature desired, and intended, that both chapters should become law. That chapter 42 became the law of the state when the governor approved it on March 5th, cannot be disputed. It could not thereafter be rendered invalid by the legislature, except by repeal. Certainly, there was no express repeal. Nor, in view of the fact that it dealt with the reemployment of teachers, while 179 dealt with joint purchase of supplies by school districts, can I find any ground to hold that it was repealed by implication. In the last analysis, the majority, by the employment of technical rules, ascribe an intention to the legislature which, I am convinced, it did not have. I assume that a repeal by implication must be intentional. I can see no rational ground for even suspecting that, by enacting chapter 179, the legislature intended to repeal its previous enactment regarding teachers' contracts, for there is no conflict or repugnancy between the two enactments.

In conference, some of the members of the court conceded, *arguendo* at least, that there was no repugnancy, but contended that a repeal by implication follows from the fact that chapter 179 omits the following language of chapter 42:

"Every teacher, principal, supervisor or superintendent holding a position as such with a school district, whose employment contract is not to be renewed by the district for the next ensuing term shall be notified in writing on or before April 15th preceding the commencement of such term of the decision of the board of directors not to renew his or her employment and the reason or reasons. therefor, and if such notification is not timely given by the district, the teacher, principal, supervisor or superintendent entitled thereto shall be conclusively presumed to have been reemployed by the district for the next ensuing term upon contractual terms identical with those which would have prevailed if his or her employment had actually been renewed by the board of directors for such ensuing term: *Provided,* That in union high school districts said written notification shall be given on or before April 30th preceding the commencement of the next ensuing term."

If the bill (78), which became chapter 179, had been introduced and passed after chapter 42 was enacted and had become the law, the omission of the language, above quoted, would justify an inference that the legislature intended to strike it from the statutes. Under the facts of this case, such an intention cannot possibly be imputed to the house. When the house passed chapter 179, or rather bill 78, which became chapter 179, there was no chapter 42 in existence, for the house passed bill 78 on February 6, and bill 66, which ultimately became chapter 42, was not passed by the senate until February 26, nor was it approved by the governor until March 5. Here, then, and although repeals by implication are not favored in law, the house is held by the majority to have participated in impliedly repealing an act nearly a month before it was passed.

No one disputes that chapter 42, Laws of 1941, was validly enacted. I cannot find that it has been re-

pealed. I, therefore, dissent from the majority's holding that the provisions of that act, hereinabove quoted, are no longer a part of our statute law.

MILLARD, J., concurs with ROBINSON, C. J.